IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD M. HAMILTON,

                Plaintiff,

  v.                                       OPINION and ORDER

PRIME COMMUNICATIONS, L.P.,              22-cv-583-jdp

                Defendant.

---

Plaintiff Richard Hamilton was injured when he fell off a stool at an AT&T store operated by defendant Prime Communications. Hamilton alleges that Prime Communications negligently provided him with a stool that could easily tip over.

Prime Communications moves for summary judgment on three bases: that it was not foreseeable that the stool would cause harm; that Hamilton's own negligence exceeded Prime Communications' negligence as a matter of law; and that public policy reasons preclude liability. The court will deny Prime Communications' motion because there are genuine disputes of fact about foreseeability and apportionment of negligence, and because the public policy reasons Prime Communications provided do not preclude liability.

UNDISPUTED FACTS

Except where noted, the following facts are undisputed:

At the time of this incident, plaintiff Richard Hamilton was 76 years old and weighed about 255 pounds. He occasionally used a wheeled walker. He was using the walker on the day that he visited an AT&T store in Rice Lake, Wisconsin. When he entered the AT&T store, Hamilton was taken to a workstation and provided with a stool. The stool stood approximately three feet tall, had a round base fourteen inches in diameter, a seat that was larger than the base, and a semi-circular footrest. A photograph of the type of stool at issue is shown below.



Hamilton sat on the stool and put his feet on the footrest. While sitting on the stool, he leaned to his left to get his wallet out of his right back pocket, which caused him to fall off the stool. Hamilton says that the stool began to tip over when he leaned to his left; Prime Communications denies that the stool tipped and says that he lost his balance. Hamilton landed on his left shoulder, elbow, knee, and foot. The fall exacerbated a preexisting condition and resulted in serious injury.

ANALYSIS

Prime Communications asserts three bases for summary judgment.

**A. Hamilton's evidence of negligence**

A common-law negligence claim has four elements: (1) a duty of care, (2) breach of that duty, (3) a causal connection between the breach and the injury, and (4) actual damages suffered as a result of the injury. *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). Wisconsin has adopted the view that everyone owes to others a duty of ordinary care. *Id.* at 747. Hamilton contends that Prime Communications breached this duty by having stools in its store that could tip over easily and by offering him one of those stools when it was aware that he had mobility limitations. As a result, Hamilton fell off the stool and suffered serious injuries.

Prime Communications does not dispute that it owed Hamilton a duty of ordinary care, or that Hamilton suffered injuries when he fell from the stool. On causation, Prime Communications argues in its brief that Hamilton's fall may have been the result of Hamilton losing his balance rather than the stool tipping. Dkt. 25 at 4. But it offers no evidence that rebuts the testimony of Hamilton's expert that the stool was a substantial factor in causing the fall. Dkt. 29 (Ziejewski Dep. 42:1–3). Prime Communications' main argument concerns the element of breach. Prime Communications contends that it did not breach its duty of ordinary care because any risk of falling that the stool posed was not foreseeable.

A party breaches its duty of ordinary care by conduct that foreseeably creates an unreasonable risk of harm to others. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 275

3

N.W.2d 660, 664–65 (1979).[1] Foreseeable harm is any harm that a reasonable person in the factual circumstances faced by the defendant would have anticipated. *LePoidevin by Dye v. Wilson*, 111 Wis. 2d 116, 330 N.W.2d 555 (1983). The specific harm that occurred to the plaintiff does not have to have been foreseeable; a person can breach its duty of ordinary care as long as some harm to someone was foreseeable. *Morgan*, 275 N.W.2d at 665; *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 326 N.W.2d 1, 11 (1975).

Because foreseeability requires determining what a reasonable person would have anticipated from the specific facts, it is generally a question for the jury. *Ceplina v. S. Milwaukee Sch. Bd.*, 73 Wis. 2d 338, 243 N.W.2d 183, 185 (1976). The court may grant summary judgment to a defendant on foreseeability only if no jury could find that a reasonable person under the circumstances would have anticipated harm. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 22, 318 Wis. 2d 622, 768 N.W.2d 568.

Hamilton provided evidence from a biomechanics expert to show that the stool he sat on posed an unreasonable risk of falling for customers like him. Dkt. 29 and Dkt. 31. The expert examined a stool of the same design and concluded that its height and small base meant that a person of Hamilton's size could cause the stool to tilt by making minor upper body movements similar to what Hamilton did when he leaned to his left to remove his wallet from his right back pocket. Dkt. 31 at 8. Because customers visiting an AT&T store would be expected to make these types of movements, the expert concluded that the stool posed a risk of falls to customers like Hamilton. Prime Communications could have lowered that risk by

---

[1] The parties frame foreseeability as part of the duty element of negligence, as have some Wisconsin cases. But the Wisconsin Supreme Court has since clarified that foreseeability is more properly addressed as a component of breach. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶¶ 16–20, 318 Wis. 2d 622, 768 N.W.2d 568.

using a stool that was lower to the ground or that had a wider base. Dkt. 29 (Ziejewski Dep. 22:2–24:19).

Prime Communications contends that no jury could find that the risk of falling from the stool was foreseeable, because a reasonable person who is not a biomechanics expert would not have foreseen any harm. Prime Communications is correct that its duty of ordinary care requires it to foresee only the harm that a reasonable person would anticipate. But the characteristics of the stool here—its tall height, small base, and footrest that allows people to take their feet off the ground—are enough that a jury could find, without any special knowledge, that the risk of harm from the stool was foreseeable to a reasonable person.

The foreseeability of harm might be even stronger with regard to Prime Communications' employee offering the stool to Hamilton. Hamilton was visibly elderly, of larger than average size, and was using a walker when he entered the store. Under Wisconsin law, a person foreseeing the harms that might arise from their actions must consider anything that a reasonable person would know about the qualities, capacities, and propensities of other people involved in the situation and must anticipate any normal actions that those people might take. *LePoidevin*, 330 N.W.2d at 560. In this case, a reasonable person would have known that Hamilton had mobility limitations, so Prime Communications would have to consider those limitations in determining if the stool posed a foreseeable risk of harm. Prime Communications would also have to anticipate the normal actions that people might take in response to its conduct, including that Hamilton would sit down on the stool when it was offered to him. Prime Communications argues that a reasonable person would not have foreseen that Hamilton would not have declined the stool, lowered it, kept his feet on the ground, stood before reaching for his wallet, or used his walker for stability if the stool was not stable enough for him.

5

Hamilton could have done any of those things, but what Hamilton did do—sit on the stool that was offered to him—was a normal response that Prime Communications should have anticipated, or at least a jury could so find.

Prime Communications also contends that a jury could only find foreseeable risk if the stool were broken or otherwise fell below industry standards. Prime Communications cites no authority limiting a finding of negligence to cases where those factors were present, nor is the court aware of any. Those factors might be relevant to a jury's determination of foreseeable risk, but their absence does not prevent a jury from finding that the risk posed to Hamilton was foreseeable.

**B.  Comparative negligence**

Prime Communications contends that Hamilton breached his own duty of ordinary care when he sat down on a stool without considering whether it was suitable for him. Comparative negligence is ordinarily a question of fact to be determined by the jury. *Cirillo v. City of Milwaukee*, 34 Wis. 2d 705, 150 N.W.2d 460, 466 (1967). Summary judgment on comparative negligence is appropriate only if the court determines that Hamilton's negligence exceeded Prime Communications' negligence as a matter of law, that is, that no jury could find otherwise. *See Zillmer v. Orpheum Theatre Project, LLC*, 2006 WI App 78, ¶ 25, 292 Wis. 2d 484, 713 N.W.2d 191.

In *Jones v. United States*, 194 F. Supp. 3d 849 (E.D. Wis. 2016), a federal court applying Wisconsin law granted summary judgment in a case somewhat similar to this one, concluding that there was no genuine dispute that plaintiff's negligence exceeded defendant's negligence. In *Jones*, a woman was injured in a VA clinic waiting room after she attempted to sit on a rolling office chair and fell because the chair had rolled out from beneath her. *Id.* at 851. The woman

6

Case: 3:22-cv-00583-jdp Document #: 45 Filed: 02/20/24 Page 7 of 8

contended that the clinic was negligent because it should have known that a rolling chair would be dangerous for clinic patients with mobility restrictions. *Id.* at 852. But the court found that any danger posed by the chair rolling away should have been obvious to the woman and she should have taken care to avoid that risk by ensuring that the chair was beneath her before sitting down. *Id.* at 855.

There are two important factual distinctions between this case and *Jones*. First, the danger that a rolling office chair might roll away is a more obvious danger to a customer than the danger that a stool might tip over as a customer leaned to get his wallet. The rolling chair did precisely what it was designed to do; Prime Communications' stool did not. A jury could find that Hamilton was not negligent, or at least was less negligent than Prime Communications, in failing to recognize and protect himself against the risk that the stool would tip.

Second, the plaintiff in *Jones* selected the rolling chair herself from among various chairs available in the waiting room. Hamilton was offered the stool by Prime Communications' employee. This doesn't mean that Hamilton couldn't have declined the stool or that he had no obligation to ascertain whether it would be safe for him before sitting down. But a jury could find that Prime Communications' negligence in offering him the chair exceeded any negligence by Hamilton failing to examine the stool he was provided with before sitting down.

## C. Public policy considerations

Prime Communications contends that public policy should prevent liability in this case. Wisconsin no longer invokes the proximate cause doctrine, but courts still sometimes limit liability for public policy reasons. *See Behrendt*, 2009 WI 71, ¶ 29. Here, Prime Communications

7

argues that allowing recovery would (1) unreasonably burden Prime Communications, (2) have no just stopping point, and (3) open the door to fraudulent claims.

To support its public policy arguments, Prime Communications argues that this case is similar to *Alwin v. State Farm Fire and Casualty Company*, in which the court found that public policy precluded liability for a dog owner whose guest tripped over her sleeping dog. 2000 WI App 92, 234 Wis. 2d 441, 610 N.W.2d 218. The court held that the dog was merely a "passive instrumentality," and that extending liability under Wisconsin's dog owner statute would lead to unlimited liability for dog owners whenever a dog was close to an injury-producing accident. *Id.* ¶ 13. But in arguing that its stool was also a passive instrumentality, Prime Communications understates its role in selecting the seating options available to its customers. A dog owner cannot control whether his sleeping dog poses a trip hazard, but Prime Communications can control what seats are available to its customers and what seats its employees offer to specific customers. Prime Communications is not exposed to unlimited liability or to the risk of fraudulent claims simply because it must ensure that its seats are reasonably safe for customers to sit on.

ORDER

IT IS ORDERED that Prime Communications' motion for summary judgment, Dkt. 24, is DENIED.

Entered February 20, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

8